IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| DAVID TIMOTHY MOORE, | : |
| Plaintiff, | : |
| v. | : Case No. 5:21-cv-00032-TES-CHW |
| Warden AIMEE SMITH, | : |
| Defendant. | : |

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant Aimee Smith's motion for summary judgment. (Doc. 70). Plaintiff did not respond to the motion, after receiving an extension of time to do so. Because the undisputed facts show that Defendant was not deliberately indifferent to Plaintiff's health and safety and that Defendant is entitled to qualified immunity, Defendant's motion for summary judgment (Doc. 70) is hereby **GRANTED**.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff filed this suit pursuant to 42 U.S.C. § 1983. (Doc. 1). Following screening of the complaint, Plaintiff's claims of deliberate indifference to health and safety based on his conditions of confinement were permitted to proceed for factual development. (Docs. 5, 11). Defendant filed a pre-answer motion to dismiss for Plaintiff's failure to exhaust administrative remedies, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). (Doc. 12). After the Court dismissed Plaintiff's complaint for failure to exhaust (Docs. 18, 25), Plaintiff appealed to the Eleventh Circuit Court of Appeals. (Doc. 29). The Court of Appeals vacated the order dismissing Plaintiff's case for failure to exhaust and remanded the case for further proceedings on the matter of exhaustion. (Doc. 38).

Following the Eleventh Circuit's remand of this case, the Court held an evidentiary hearing to determine whether Plaintiff had filed an emergency grievance. (Docs. 42, 49). Prior to the hearing, Defendant produced the disputed handwritten grievance, moved to withdraw her exhaustion defense, and asked permission to answer Plaintiff's complaint. (Doc. 44). Following the hearing on November 14, 2023, the Court permitted Defendant to answer the complaint and entered a discovery order. (Doc. 50). Plaintiff filed a motion for sanctions after the hearing (Doc. 47), which the Court denied. (Doc. 62). Discovery was extended at the request of both parties (Docs. 56, 57, 60, 61). Plaintiff also filed a motion to compel, which was granted in part and denied in part. (Docs. 69, 72). On October 11, 2024, Defendant supplemented discovery as directed. (Doc. 77).

Defendant filed a motion for summary judgment on August 30, 2024. (Doc. 70). Plaintiff argued that he had not received the original motion for summary judgment, and the Court directed Defendant to re-send the motion on November 8, 2024, which was done the same day. (Docs. 80, 81, 82). Plaintiff then requested an extension of time to respond to Defendant's summary judgment motion. (Doc. 83). The Court granted the motion on December 18, 2024, and extended Plaintiff's response deadline until January 21, 2025. (Doc. 84). Despite requesting and receiving an extension, Plaintiff has not responded. *See* (Docket).

**SUMMARY JUDGMENT STANDARD**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the burden of informing the Court of the basis for its motion, and of citing "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any," that support summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). In resolving motions for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

Although Plaintiff failed to respond to the Defendant's motion for summary judgment, summary judgment is not properly awarded by default. S*ee Trs. of Central Pension Fund of Int'l Union of Operating Eng'rs and Participating Emp'rs*, 374 F.3d 1035, 1039 (11th Cir. 2004). Nevertheless, by failing to respond to the Defendants' motions, Plaintiff has failed to rebut the Defendants' statements of undisputed material facts, triggering consequences under both the Federal Rules of Civil Procedure and this Court's Local Rules.

Federal Rule of Civil Procedure 56(e)(2) provides that if a party "fails to properly address another party's assertion of fact as required by Rule 56(c)," then the Court may "consider the fact undisputed for purposes of the motion." Rule 56(e)(2). This Court's Local Rule 56 similarly provides: "All material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate." MDGA Local Rule 56. Finally, Federal Rule of Civil Procedure 56(e)(3) provides that the Court may "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to" summary judgment. Rule 56(e)(3). *See also Urdaneta v. Wells Fargo Bank, N.A.*, 734 F. App'x 701, 704 (11th Cir. 2018). Because Defendant properly supported her factual assertions with specific citations to the record, and because Plaintiff failed to respond, the Defendant's facts may be accepted by the Court as undisputed. Although Plaintiff did not file a response, the entire record has been considered in preparation of this recommendation as permitted by Rule 56(c)(3), especially in light of the lengthy procedural history of this case.

**RELEVANT FACTS**

Plaintiff is a state inmate who was transferred to Dooly State Prison (DSP) on January 31, 2019. (Defendant's Statement of Material Facts, Doc. 70-2, ¶ 3). As of December 16, 2024, the date the latest document for filing was received from Plaintiff, he remained incarcerated at DSP. *See* (Doc. 83-1). Defendant Aimee Smith was the warden at DSP from December 2018 until March 2023. (Doc. 70-2, ¶ 2). She now serves as warden of another corrections facility. (Doc. 70-4, ¶ 2).

When Plaintiff arrived at DSP, he was placed in Building D, Dorm 3 (D-3). (Doc. 70-5, p. 1). On February 14, 2019,[1] he was transferred to Building H-1, where he remained until November 25, 2020, when he was moved to Building D, Dorm 2 (D-2). (*Id.*; Doc. 1, p. 8). When he entered D-2, Plaintiff saw black mold that had not been present in D-3. (Doc. 70-2, ¶ 4, 8; Doc. 70-3, p. 29). A few days after being moved, he began to experience symptoms such as headaches, coughing, chills, and urinary issues. (Doc. 70-3, p. 46, 48). Plaintiff testified that he never personally spoke to Defendant about the issues in D-3 but did write to Defendant to request a housing change due to the health concerns, and that Defendant failed to move him. (Doc. 70-3, p. 48-49, 70, 85). Plaintiff began experiencing symptoms that he related to a urinary tract infection (UTI) on January 1, 2021. (Doc. 70-3, p. 84). He was diagnosed with a UTI on January 5, 2021. *See* (Doc. 70-2, ¶ 9, 11-13). That same day Plaintiff filed a grievance, which he labeled as an emergency, about the mold and his ailments. (Doc. 44-1; Doc. 70-3, p. 34-35). Plaintiff commenced this action on January 19, 2021. (Doc. 1).

Prison medical records document that a January 5, 2021 urinalysis showed that Plaintiff's urine was positive for E. coli. (Docs. 70-2, ¶ 12; 70-6; 70-9). Plaintiff was prescribed an antibiotic

---

[1] Plaintiff explained that sometimes the transfer will be entered on a movement history on one day but that a transfer may not occur until the following day. *See, e.g.,* (Plaintiff's Deposition, Doc. 70-3, p. 26-27). The one-day date differences are not material to Plaintiff's case.

to treat the UTI. (Doc. 70-6). At a follow-up appointment a week later, on January 12, 2021, Plaintiff reported improvement but still showed signs of infection. (Docs. 70-7). Plaintiff continued to take an antibiotic. (*Id.*; Doc. 70-3, p. 48, 51). Plaintiff was moved to Building H-1 on January 19, 2021, after which Plaintiff testified his symptoms improved. (Doc. 70-3, p. 48, 68; Doc. 70-5, p. 1). Plaintiff was still having some discomfort at his February 1, 2021 medical visit. (Doc. 70-8). Based upon testing, staff determined that his UTI was resolving. (Doc. 70-8; 70-10).

In his deposition, Plaintiff explained that he believes the mold exposure in D-3 weakened his immune system to the point that he developed the UTI, and that Defendant's failure to move him sooner, especially in light of his emergency grievance, constitutes deliberate indifference. *See* (Doc. 17-2, p. 1; Doc. 70-3, p. 52, 76-77, 91). He also believes that Defendant knew about the issues in D-3 because of the repair and cleaning efforts that were made, the letter he wrote to Defendant, and his emergency grievance. *See, e.g.*, (Doc. 70-3, p. 52, 87).

Defendant does not dispute that black markings[2] were present on the walls in Building D. Because the building was an open dorm with almost 90 inmates, the buildings were cleaned with bleach and frequently painted. (Doc. 70-4, ¶¶ 4-5, 7). Plaintiff confirmed that these measures were taken at the prison. (Doc. 70-3, p. 85). In her declaration, Defendant explains that Building D suffered from roof leaks and that an outside contractor was hired to make repairs around January 2021. (Doc. 70-4, ¶ 9-10). Defendant states that she was involved in the decision to move Plaintiff to Building H in January 2021 and that she did not keep him in Building D "to the detriment of his health." (Doc. 70-4, ¶ 11-12).

---

[2] Defendant described "black spots" and did not use the term "mold," (Doc. 70-4, ¶ 6). For purposes of this motion, where the disputed facts must be construed in Plaintiff's favor, the Court presumes these markings were black mold.

5

## ANALYSIS

Defendant requests summary judgment, arguing that she is protected from suit under qualified immunity because Plaintiff cannot establish his deliberate indifference claim. (Doc. 70). When considering if summary judgment is appropriate based on qualified immunity, the Court "[draws] all inferences and [views] all of the evidence in the light most favorable to the nonmoving party." *Jones v. Michael*, 656 F. App'x 923, 925 (11th Cir. 2016) (internal quotations omitted). Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotations omitted). Defendants "cannot obtain qualified immunity unless [she establishes she was] acting within [her] discretionary authority." *Underwood v. City of Bessemer*, 11 F.4th 1317, 1328 (11th Cir. 2021). It is undisputed that decisions regarding prison administration fell within Defendant's discretionary authority. *See, e.g., Goebert v. Lee Cnty.*, 510 F.3d 1312, 1329 (11th Cir. 2007).

Once action under discretionary authority has been established, "the burden shifts to the plaintiff, who must show the [defendants are] not entitled to qualified immunity." *Underwood*, 11 F.4th at 1328. "At this stage, [the Court asks] two questions: (1) 'whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right," and (2) if so, 'whether the right at issue was 'clearly established' at the time of the [defendants'] alleged misconduct.'" *Id.* at 1328 (quoting *Pearson*, 555 U.S. at 231, 232). Both must be present to for a plaintiff to prevail. *Id.* Plaintiff must therefore first show a violation of a constitutional right to survive summary judgment. As explained, the record shows that Plaintiff cannot meet this burden.

It is well-established that even though "the Constitution does not mandate comfortable prisons," a prisoner's claim that the conditions of his confinement constitute cruel and unusual

punishment may state a claim for relief under the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). "To challenge conditions of confinement, a prisoner must make 'an objective showing of a deprivation or injury that is sufficiently serious to constitute a denial of the minimal civilized measure of life's necessities and a subjective showing that the official had a sufficiently culpable state of mind.'" *McNeely v. Wilson*, 649 F. App'x 717, 723 (11th Cir. 2016) (quoting *Thomas v. Bryant*, 614 F.3d 1288, 1303 (11th Cir. 2010)); *see also Brooks v. Warden*, 800 F.3d 1295, 1303-04 (11th Cir. 2015). This standard is only met when the challenged conditions pose "an unreasonable risk of serious damage to [the prisoner's] future health or safety," *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (internal quotation marks omitted), or if society "considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk," *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

The prisoner must also show that prison officials acted with deliberate indifference, that is, that the officials knew the challenged conditions posed an excessive risk to the prisoner's health or safety but disregarded them. *Swain v. Junior*, 958 F.3d 1081, 1088-89 (11th Cir. 2020) (citing *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)). The Eleventh Circuit recently clarified that "a deliberate-indifference plaintiff must prove that the defendant acted with subjective recklessness as used in the criminal law." *Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (internal quotations and citation omitted).[3] The "plaintiff must show that the defendant official was subjectively aware that his own conduct—again, [her] own actions or inactions—put the plaintiff at substantial risk of serious harm." *Id.* at 1258. Even if the risk was known, a defendant may still

---

[3] *Wade* settled an intra-circuit split between whether a defendant must act with "more than mere negligence" or "more than gross negligence," but clarified that the appropriate standard was "subjective recklessness as used in criminal law." *Wade*, 106 F.4th 1251.

7

not be found liable, so long as she acted reasonably. *Id.* at 1255 (citing *Farmer*, 511 U.S. at 844, 837). Even if the above standards are met, a plaintiff must also show that his injury was caused by the defendant's deliberate indifference. *See, e.g., Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). The record, even when construed in Plaintiff's favor, demonstrates that Defendant is entitled to qualified immunity.

For the purposes of the motion, the Court assumes that the black marks on the wall were black mold and that Plaintiff was exposed to it.[4] And although there is no proof that Defendant received Plaintiff's December 2020 letter, and the filing of a grievance may not automatically confer sufficient subjective knowledge on a prison official, the Court also assumes, for purposes of this motion, that Defendant was aware (1) that black mold was present in D-3 and (2) that Plaintiff had been exposed. Even with all of these assumptions in Plaintiff's favor, however, Plaintiff cannot demonstrate that Defendant disregarded the risk because the record shows that Defendant responded reasonably under the circumstances.

The undisputed record shows that Defendant knew that sanitation was a concern throughout the prison, but especially in Building D because it was an open dorm and had a leaky roof. She regularly had the area cleaned and painted. Plaintiff admitted that Defendant took these measures even though he believed them to be inadequate. (Doc. 70-3, p. 85, 88-89). The record also shows that Defendant had outside contractors make roof repairs around the time that Plaintiff's claim arose. (Doc. 70-14). Moreover, irrespective of these repairs and remedial efforts, Plaintiff was moved, in consultation with Defendant, to a different building about two weeks after Plaintiff

---

[4] While Defendant appears to concede that exposure to black mold may be objectively serious for purposes of the motion, sister courts have questioned whether exposure to black mold satisfies the objection component of deliberate indifference claim. *See Marine v. Kelly* 2019 WL 2587814, *4 (N.D. Fla. May 17, 2019) (collecting cases).

filed a grievance about his claim. Under the circumstances, these actions are reasonable responses to any risk that Plaintiff may have faced while in Building D-3.

Plaintiff also faces a causation problem, because the record fails to show that Defendant's action or inaction caused a weakened immune system and contributed to Plaintiff's UTI. Plaintiff testified that his resulting UTI is proof, in and of itself, that Defendant's failure to move him from D-3 sooner or otherwise to resolve the black mold demonstrates her deliberate indifference. (Doc. 70-3, p. 46-47, 51, 90, 91). The only "proof" that Plaintiff's exposure to black mold caused his UTI, however, is Plaintiff's personal belief that he would not have had a UTI but for being in D-3. Plaintiff's medical records demonstrate that E. coli bacteria was found in his urine. Nothing in the record, except for Plaintiff's speculation, shows that exposure to black mold causes a UTI based upon the presence of E. coli in the urine. Plaintiff's unsupported speculation cannot show that Defendant's actions or inaction regarding Plaintiff's exposure to black mold in Building D resulted in his UTI diagnosis. *See, e.g., Cordoba v. Dillard's Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (explaining that "unsupported speculation…does not meet a party's burden of producing some defense to a summary judgment motion. Speculation does not create a *genuine* issue of fact….") (internal citations omitted) (emphasis in original).

The undisputed material facts in the record, even when construed in Plaintiff's favor, show that Defendant was not deliberately indifferent to Plaintiff's health and safety. Because there are no genuine issues of material fact, and Defendant is entitled to judgment as a matter of law, Defendants' motion for summary judgment (Doc. 70) is **GRANTED**.

**SO ORDERED**, this 28th day of February, 2025.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**